IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BRYAN J. STROTHER,

    Petitioner,                 No. CIV S-05-1097 GEB GGH P

   vs.

STATE OF CALIFORNIA, et al.,

    Respondents.             FINDINGS AND RECOMMENDATIONS

                                   /

I. <u>Introduction</u>

        Petitioner is a state prisoner proceeding through counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This action is proceeding on the amended petition filed February 9, 2006. Petitioner challenges his 2003 conviction for illegal wiretapping, Cal. Penal Code § 632(a). For this conviction, petitioner was placed on felony probation. Petitioner alleges that the trial court's failure to give a necessity defense jury instruction deprived him of his right to present a defense. After carefully considering the record, the court recommends that the petition be denied.

II. <u>Anti-Terrorism and Effective Death Penalty Act (AEDPA)</u>

        The Antiterrorism and Effective Death Penalty Act (AEDPA) applies to this petition for habeas corpus which was filed after the AEDPA became effective. <u>Neelley v. Nagle</u>,

138 F.3d 917 (11th Cir.), citing Lindh v. Murphy, 117 S. Ct. 2059 (1997).  The AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential standards of review to be used by a federal habeas court in assessing a state court's adjudication of a criminal defendant's claims of constitutional error.  Moore v. Calderon, 108 F.3d 261, 263 (9th Cir. 1997).

In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d).  Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court.  There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law.  Id. at 1519.  "Contrary to" clearly established law applies to two situations:  (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000).  It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions.  While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at 1522 (emphasis in original).  The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority.  Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early v. Packer, 537 U.S. 3, 123 S. Ct. 362 (2002). Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority. Id. An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred. Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003). Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

However, where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

In the instant case, the California Supreme Court denied the petition for review without comment or citation. Respondent's July 19, 2005, lodged document no. 8. The California Court of Appeal issued a reasoned decision, but did not address the constitutional issue. Respondent's July 19, 2005, lodged document no. 6. Rather, the California Court of Appeal applied state law only in addressing petitioner's claim. Id. Accordingly, this court must independently review the record to determine whether the denial of petitioner's claim by the silent California Supreme Court decision was objectively unreasonable.

III. Background

The factual and procedural background is summarized in the opinion of California Court of Appeal lodged on July 18, 2005. After independently reviewing the record, the court finds this summary to be accurate and adopts it below.

1  Before the events that gave rise to his prosecution, defendant lived with his wife
   (Christine), their three-year-old daughter S., and Christine's three older daughters
2  from prior relationships: J. (age 10), Ma. (age 7) and Me. (age 16).

3  Defendant's marriage to Christine was troubled, and Christine's extramarital
   affair with a man named Ron contributed to the tension.
4
   After defendant confronted Christine about the affair and they began to discuss
5  divorce, Christine and defendant continued to share the house, but defendant
   moved into the basement. A day or two later, Christine found a photograph of
6  defendant taken with her daughter J. (defendant's stepdaughter), in which J. had
   torn the image in half and scratched out the face and crotch portions of defendant
7  in the photograph. Christine asked J. if defendant had ever touched her
   inappropriately, and J. said, "no." About the same time, Christine filed for
8  divorce.

9  Shortly thereafter, Christine discovered a recording device connected to a tape
   recorder: On the tape were recorded telephone conversations between Christine
10 and Ron, as well as conversations to which defendant was a party.

11 Notwithstanding J.'s denials that she had been molested, Christine continued to
   harbor "a suspicion...that maybe [defendant] had done something to her."
12 Eventually, J. reported to Christine that defendant had molested her, and
   defendant was arrested.
13
   Defendant was charged with two counts of committing a lewd act upon a child
14 under the age of 14 in violation of Penal Code section 288, subdivision (a), and
   one count of felony eavesdropping, in violation of Penal Code section 632,
15 subdivision (a).

16 At trial, defendant denied molesting J., but admitted recording telephone
   conversations at the house. He testified that, although he initially bought the
17 recording device to preserve advice during conversations with his out-of-state
   attorney, he continued recording because he "just wanted to know what was going
18 on between Christine and her love, as concern for my daughter and her safety."
   His motivation, he testified, was to "gather information because I was in fear for
19 the safety of my daughter and her upbringing" and he wanted to ensure that he got
   custody.
20
   Defendant also testified he learned from Christine that Ron had a gun. Later,
21 while eavesdropping on Christine's conversations with Ron, he heard " a threat
   ...involving a gun." Defendant then contacted the county's victim assistance
22 program in an unsuccessful effort to obtain a restraining order preventing Ron
   from coming to the house where defendant Christine continued to live; he testified
23 he was concerned that Ron might bring weapons to the house. When defendant
   spoke to sheriff's deputies around the time of his arrest, he told them his
24 "concerns involving Ron" coming to the house, but did not tell them he was
   concerned about his physical safety because he knew he had obtained information
25 about the threat illegally.

26 \\\\\

The jury acquitted defendant of the molestation charges, and convicted him of eavesdropping.

Respondent's Lodged July 18, 2005, lodged document no. 6, pp. 2-4.

IV. <u>Discussion</u>

Petitioner argues that the trial court's failure to give a necessity defense instruction violated his right to present a defense. The California Court of Appeal denied this claim for the following reasons:

> At trial, defendant asked the court to instruct the jury on the defense of necessity with CALJIC No. 4.43 (1998 Rev.)(6th ed. 1996). That instruction provides:
>
> "A person is not guilty of a crime when [he] [she] engages in an act, otherwise criminal, through necessity. The defendant has the burden of proving by a preponderance of the evidence all of the facts necessary to establish the elements of this defense, namely:
>
> "1. The act charged as criminal was done to prevent a significant and imminent evil, namely, [a threat of bodily harm to oneself or another person] [or]...;
>
> "2. There was no reasonable legal alternative to the commission of the act;
>
> "3. The reasonably foreseeable harm likely to be caused by the act was not disproportionate to the harm avoided;
>
> "4. The defendant entertained a good-faith belief that [his] [her] act was necessary to prevent the greater harm;
>
> "5. That belief was objectively reasonable under all the circumstances; and
>
> "6. The defendant did not substantially contribute to the creation of the emergency."
>
> The trial court stated it denied defendant's request because "I don't think that there was significant and imminent threat of bodily harm that has been established in the evidence."
>
> On appeal, defendant contends the trial court erred in rejecting the instruction, thereby prejudicially infringing upon his right to a jury determination based on his theory of the case.
>
> We disagree: The instruction was properly refused.
>
> "California appellate courts have recognized the necessity defense 'despite the absence of any statutory articulation of this defense and rulings from the California Supreme Court that the common law is not a part of the criminal law in

5

California.' [Citation.]" (In re Eichorn (1998) 69 Cal.App.4th 32, 388.)

The defense of necessity is "'founded upon public policy and provides a justification distinct from the elements required to prove the crime. [Citation.] The situation presented to the defendant must be of an emergency nature, threatening physical harm, and lacking an alternative, legal course of action. [Citation.] The defense involves a determination that the harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged. [Citation.] Necessity does not negate any element of the crime, but represents a public policy decision not to punish such an individual despite proof of the crime. [Citations.] [¶] An important factor of the necessity defense involves the balancing of the harm to be avoided as opposed to the costs of the criminal conduct. [Citation.]" (In re Eichorn, supra, 69 Cal.App.4th at p. 389 [defense of necessity available to rebut charge of illegal camping], quoting People v. Heath (1989) 207 Cal.App.3d 892, 900-901 [noting the defense of necessity has been recognized in prosecutions for a nonviolent prison escape, kidnapping, and false imprisonment]; but see People v. Youngblood (2001) 91 Cal.App.4th 66, 72-73 [defense unavailable against charge of animal cruelty] and People v. Garziano (1991) 230 Cal.App.3d 241, 242 [necessity no defense to crimes committed while demonstrating outside abortion clinic].)

A trial judge must instruct on the law applicable to the facts of the case, and a defendant has a right to an instruction that pinpoints the theory of the defense, but the judge must only give those instructions which are supported by substantial evidence, and must refuse instructions on a defense theory for which there is no supporting evidence. (People v. Ponce (1996) 44 Cal.App.4th 1380, 1386; see also People v. Bolden (2002) 29 Cal.4th 515, 558 .) "The standard for evaluating the sufficiency of the evidentiary foundation [to support a necessity instruction] is whether a reasonable jury, accepting all the evidence as true, could find the defendant's actions justified by necessity. [Citation.]" (People v. Trippet (1997) 56 Cal.App.4th 1532, 1539, citing People v. Slack (1989) 210 Cal.App.3d 937, 941.)

In rejecting defendant's request that the jury be instructed on the necessity defense with CALJIC No. 4.43, the trial court focused on the first element of the defense as defined by that instruction, i.e., that defendant must have acted to "prevent a significant *and* imminent evil" (italics added). "[A] well-established central element [of the necessity defense] involves the emergency nature of the situation, i.e., the imminence of the greater harm which the illegal act seeks to prevent. [Fn. omitted.]" (People v. Patrick (1981) 126 Cal.App.3d 952, 960 & fn. 6 [in "[s]ome formulations of the necessity defense specifically include an 'imminence' requirement," while "[i]n others, the immediacy of the danger becomes a factor in assessing the reasonableness of the actor's belief regarding the magnitude of the 'greater harm' he seeks to prevent"]; see also In re Eichorn, supra, 69 Cal.App.4th at p. 389 [defense available only if the defendant was presented with a situation "'of an emergency nature, threatening physical harm, and lacking an alternative, legal course of action'"]; People v. Beach (1987) 194 Cal.App.3d 955, 971 [the necessity defense "excuses criminal conduct if it is justified by a need to avoid an imminent peril"].

\\\\\

> Mindful that doubts as to the sufficiency of the evidence to warrant the necessity instruction should be resolved in favor of the accused (People v. Patrick, supra, 126 Cal.App.3d at p. 961), we nonetheless conclude the factual predicate for defendant's claim is insufficient as a matter of law to establish all of the elements of that defense because no exigent circumstance required him to record Christine's conversations.
>
> First, defendant testified his "initial" motivation for installing the recording device was to preserve his own conversations with counsel, not to avoid harm to himself or his daughter.
>
> Second, defendant's concern "for the safety of [his] daughter," which prompted him to continue automatically recording every telephone conversation after he began the practice, arose from his fear that, if he ultimately lost custody of his daughter in the pending divorce action, her subsequent "upbringing" would ultimately suffer, not from a fear for her immediate physical safety.  Even had the jury accepted that defendant's daughter would be imperiled by remaining in her mother's care, that evidence did not establish that defendant considered it to pose an "emergency" situation (cf. In re Eichorn, supra, 69 Cal.App.4th at p. 389).
>
> Finally, the evidence failed to establish that defendant recorded Christine's conversations to "protect[] [him]self from being murdered" by Christine's friend, Ron, as he now argues.
>
> Even had defendant's testimony shown that the conversation contained an *imminent* threat of bodily harm, which it did not, defendant testified he first heard about "a threat...involving a gun" *while listening to a conversation he had recorded.*  This testimony effectively undermined any argument that he engaged in the illegal eavesdropping because he feared bodily harm at Ron's hands; at the most, defendant feared Ron because of what he heard while engaged in illegal eavesdropping.
>
> Because the evidence offered by defendant was insufficient to permit a reasonable jury to find that his unlawful eavesdropping "was done to prevent a significant and imminent evil" (CALJIC No. 4.43), the trial court properly refused to instruct the jury on the necessity defense.

Respondent's Lodged July 18, 2005, lodged document no. 6, pp. 2-4.

"Due process requires that criminal prosecutions "comport with prevailing notions of fundamental fairness" and that "criminal defendants be afforded a meaningful opportunity to present a complete defense." Clark v. Brown, 442 F.3d 708, 714 (9th Cir. 2006), as amended on denial of rehearing and rehearing en banc, 2006 WL 1462274 (9th Cir. May 30, 2006), quoting California v. Trombetta, 467 U.S. 479, 485, 104 S.Ct. 2528 (1984).  "When habeas is sought under 28 U.S.C. § 2254, '[f]ailure to instruct on the defense theory of the case is reversible error

if the theory is legally sound and evidence in the case makes it applicable." Id., quoting Beardslee v. Woodford, 358 F.3d 560, 577 (9th Cir. 2004)(as amended). "A habeas petitioner must show that the alleged instructional error 'had substantial or injurious effect or influence in determining the jury's verdict.'" Id., quoting Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710 (1993).

While understanding petitioner's plight from a practical perspective, as well as the argued possibility, small or large, of overzealous prosecution on the molestation charges given the jury's expeditious rejection of the prosecution's case,[1] petitioner misapprehends the law which governs here on the eavesdropping charges. While petitioner has a right to argue a defense, the defense remains circumscribed by state law. Petitioner still has the requirement of presenting sufficient evidence to warrant the necessity instruction for *all* elements of the state law defense. In light of that evidence, it cannot be reasonably asserted that at the time petitioner initiated the eavesdropping, or even at any other time, he was in *imminent* peril of serious bodily harm. As noted by the state appellate court, petitioner's initial motivation was not based on a desire to avoid harm to himself or his daughter. In addition, petitioner feared Ron because of what he heard while engaged in the illegal eavesdropping, i.e. he did not engage in the eavesdropping because of his imminent fear of Ron.[2]

This court notes that petitioner testified that when he was first questioned by Deputy Sheriff Peay regarding the alleged molestation, he did not mention his safety concerns regarding Ron. RT at 267. Petitioner did not mention his safety concerns because he knew he

---

[1] The alleged victim's mother was a member of the District Attorney's Office. However, even if petitioner's argued position regarding the lack of evidence for the molestation charges is true, such alleged overzealousness has nothing to do with the viability of the tape recording eavesdropping charges.

[2] Indeed, in reading petitioner's papers, one gets the impression that because petitioner *subjectively* thought the eavesdropping to be necessary, he was entitled to argue the necessity defense. However, a good faith belief is only one of the prerequisites of a necessity defense. Clearly, the bulk of evidence which permits one to argue the necessity defense is objective in nature.

had obtained this information through an illegal wiretap. RT at 269. Petitioner also testified that earlier that day, he had been to the Victim-Witness office because he was contemplating filing a restraining order to keep Ron out of the house. RT at 255. Petitioner testified that he did not go to the Sheriff's department regarding these concerns because he was not sure about the legality of the wiretapping and he wanted to gather more information. RT at 269-270

Petitioner's testimony that he contemplated filing a restraining order and that he continued the wiretapping because he was attempting to gather more information does not suggest that he perceived an <u>imminent</u> threat of bodily harm. That petitioner began the wiretapping before he knew of the alleged threats from Ron also demonstrates that the wiretapping was not done to prevent an imminent killing or bodily harm.

Finally, petitioner has also submitted a letter written by a juror to the sentencing judge. <u>See</u> Petitioner's Appendix filed June 3, 2005, p. 76. In this letter, the juror states he and the other jurors felt that petitioner had a legitimate reason for wiretapping. This letter is inadmissible in these proceedings. Fed. R. Evid. 606(b).[3]

After independently reviewing the record, the court finds that the denial of petitioner's claim by the California Supreme Court was not an unreasonable application of clearly established Supreme Court authority.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned

---

[3] Also, the letter is not very probative. What the juror thought might be a legitimate reason to eavesdrop, e.g. cheating wife, may have nothing to do with the requirements of the law with respect to the necessity defense.

1  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
2  shall be served and filed within ten days after service of the objections.  The parties are advised
3  that failure to file objections within the specified time may waive the right to appeal the District
4  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

5  DATED: 6/28/06

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

ggh:kj
str1097.157